THE CITY OF NEW YORK, Respondent, *v.* RALPH DELLI PAOLI et al., Appellants.

**New York (city of)** — construction of contract granting right to pick over refuse at dumps of street cleaning department.

By its charter the city of New York was obliged to sweep and to clean its streets and a department was constituted for the purpose, upon which was imposed the duty to perform that work and to remove the street sweepings or refuse, through contracts which the commissioner was empowered to make. (New York City Charter [L. 1901, ch. 466], §§ 534, 539, 541, 544, 546.) When, therefore, the commissioner advertised for bids for the privilege of picking over the refuse at dumps of the department as enumerated and entered into a contract granting that privilege for the same dumps, the law necessarily will imply a covenant by the city to deliver all of its refuse gathered from street cleaning at those dumps, even if exact words to that effect are wanting. Hence, such a contract is not void for lack of mutuality but is binding upon the contractor and he is liable for his default thereon.

*City of New York* v. *Delli Paoli*, 136 App. Div. 939, affirmed.

(Submitted April 5, 1911 ; decided April 25, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 11, 1910, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The action was brought by the city to recover upon a bond of the defendants, which was executed to secure the performance by the defendant Delli Paoli of a contract with the city and which was required to be furnished. The contract related to the right to pick over refuse matter at "dumps" established by the street cleaning department. The department advertised for proposals for bids "for loading and trimming deck scows and other vessels of the Department of Street Cleaning and for the privilege of sorting and picking over and appropriating certain of the refuse at the dumps of the said Department in the Borough of Manhattan." The advertisement stated the terms and conditions with which bidders were required to comply and specified the situation of the "dumps." In February, 1908, the contract in question was made and Delli Paoli, therein, agreed to pay the plaintiff the sum of $1,802.35, weekly in advance, during the continuance of the contract ; the period of which was fixed at a year of fifty-two weeks, beginning on February 11th, 1908. It contained this provision, that Delli Paoli "shall have the privilege of picking over all refuse at the said dumps, including paper, rags, wood and metal objects, except bones, fat or other refuse of similar organic nature, as these materials are already disposed of by an existing contract, and shall have the right to appropriate to his own use and behoof the said materials." He was required to provide the labor necessary to sort the materials and to remove the ashes of the furnace on carts of the department, whenever rubbish was hauled direct to an incinerator; to comply with the laws, State and Federal, relating to the work and to faithfully perform the work, and he was forbidden to assign, or otherwise dispose of, the contract, without

the written consent of the commissioner. It was provided that, if the contract should be abandoned, the city might procure it to be performed, so far as the contractor had failed to perform it, "and in such case the City shall have power to charge to the contractor the amount of loss suffered by the City." "In case the price paid to the City shall be less than would have been payable under this contract, if the same had been completed by the contractor, then the contractor shall pay to the City the amount of such decrease in price, and in case such price shall be greater   *   *   *   then the contractor shall forfeit all claim to the difference." The advertisement and proposal for bids were made a part of the contract; as were, also, certain specifications annexed, which specified certain ".dumps" by the same description as in the advertisement for proposals, gave the commissioner the right to change their location, or to increase their number by not more than two, and imposed various obligations relating to the methods of performing the work. The trial was had before a judge, without a jury, and findings were made by the court. It was found that the contract was made between the parties after due advertisement by the city and that it was duly approved and ratified by the proper municipal authorities. It was found that Delli Paoli made the agreed weekly payments upon the contract to April 6th, 1908, when he abandoned the contract and made no further payments; that efforts were made by the city to procure the performance of the work contracted for, during the rest of the year, through other contracts, and that there resulted a deficiency on the contract of upwards of $63,000. Judgment was, therefore, directed for the sum of $5,000, the amount of the bond given by the defendants, with interest, and the judgment, thereupon entered, has been affirmed by the Appellate Division in the first department by an unanimous vote of the justices.

*John C. Tomlinson, John C. Tomlinson, Jr.,* and *Theodore E. Tomlinson* for appellants. The contract in question is unilateral and void for lack of mutuality. (*C. W. & C. Co.* v. *N. P. C. Co.*, 115 App. Div. 388; *U. & S.R. R. Co.* v. *Brinkerhoff*, 21 Wend. 139; *A. C. O. Co.* v. *Kirk*, 68 Fed. Rep. 791; *Rafolovitz* v. *Am. Tobacco Co.*, 73 Hun, 87; *Jackson* v. *A. P. C. Co.*, 122 App. Div. 345; *C. & G. E. R. Co.* v. *Dane*, 43 N. Y. 240; *Hurd* v. *Gill*, 45 N. Y. 341.) The defendant is in no way estopped from contesting the validity of the contract by reason of his partial performance. (*Rafolovitz* v. *Am. Tobacco Co.*, 73 Hun, 87; *C. & G. E. R. R. Co.* v. *Dane*, 43 N. Y. 240.) The city was without power to enter into the contract and it is, therefore, void. (*Smith* v. *City of Newburgh*, 77 N. Y. 130; *McDonald* v. *Mayor, etc.*, 68 N. Y. 23; *Hodges* v. *City of Buffalo*, 2 Den. 110; Dillon on Mun. Corp. [4th ed.] 146.)

*Archibald R. Watson, Corporation Counsel* (*Theodore Connoly* and *Clarence L. Barber* of counsel), for respondent. The contract is supported by a valid consideration and it contains mutual obligations. (Code Civ. Pro. § 840 ; *Williams* v. *Whittell*, 69 App. Div. 340 ; *Laclede Const. Co.* v. *Tudor Iron Works*, 169 Mo. 137 ; *H. C. Co.* v. *Penn. Coal Co.*, 8 Wall. 276.) The city was authorized by common law and by statute to enter into the contract. (*Pullman* v. *Mayor, etc.*, 54 Barb. 169 ; *Ketchum* v. *City of Buffalo*, 14 N. Y. 356 ; *Peterson* v. *Mayor, etc.*, 17 N. Y. 449.) The contract was partially performed to the benefit of both parties. Each, therefore, is estopped to challenge its validity. (*City of Buffalo* v. *Balcom*, 134 N. Y. 532 ; *Mayor, etc.*, v. *Sonneborn*, 113 N. Y. 423 ; *B. G. L. Co.* v. *Cluffy*, 151 N. Y. 24 ; *W. L. Ins. Co.* v. *Clason*, 162 N. Y. 305 ; *Vought* v. *E. B. & L. Assn.*, 172 N. Y. 508 ; *Tramblay* v. *Supreme Council*, 90 App. Div. 39 ; *McVity* v. *Albro Co.*, 90 App. Div. 109.)

GRAY, J.  The principal question of law, which has survived the affirmance of the judgment and which is presented upon this appeal, concerns the validity of the contract between the city and Delli Paoli.  The appellants argue that it was "unilateral and void for lack of mutuality."  It is insisted that the instrument sued upon as the contract contains no covenant on the part of the city and imposes no obligation upon it.  Of course, if it is the fact that the city had not bound itself to do anything, which, as an obligation, was enforceable by Delli Paoli, then the instrument lacked an essential element of a contract.  Such a contract must be obligatory upon both parties, in the sense that their promises are concurrent and enforceable by either.  If in this instrument there existed but the promise on the part of Delli Paoli and there was no agreement on the part of the city to deliver its refuse at the "dumps" for the contractor to pick over, then the appellants' objection would be sound.  It is not true, however, that the city came under no obligation to Delli Paoli.  In reading a contract, we are not, necessarily, limited to its exact words in interpreting its obligations; we are to consider what its language implies as the intention of the parties.  This contract contains an express agreement of the city that the contractor, Delli Paoli, "shall have the privilege of picking over all refuse at the dumps, including paper, rags, wood and metal objects * * * and shall have the right to appropriate to his own use the materials."  There can be no doubt that the city thereby agreed to grant to him the privilege mentioned and the property in the materials, in consideration of the weekly payments he had promised to make.  So much is clear; but it is equally clear that there was a promise on the part of the city to deliver all the refuse gathered by its street cleaning department at certain established dumps.  This promise is to be implied from all that entered into the contract; for that included the advertised proposals for bids for the privilege specified and the specifications for doing the

work.  By its charter, the city was obliged to sweep and to clean its streets and a department was constituted for the purpose, upon which was imposed the duty to perform that work and to remove the street sweepings, or refuse, through contracts, which the commissioner was empowered to make.  (Greater New York Charter, [L. 1901, ch. 466] sections 534, 539, 541, 544, 546.)  When, therefore, the commissioner advertised for bids for the privilege of picking over the refuse at the dumps of the department, "as enumerated," and the contract granted it for the same dumps, the law, necessarily, will imply a covenant by the city to deliver all of its refuse gathered from street cleaning at those dumps, even if exact words to that effect are wanting.  It is not a case of an omission by the parties, which courts will not feel justified in supplying; it is a case where the language used by them shows that an additional, or correlative, covenant was intended, which the courts should, and will, supply.  The agreement of the city that its street refuse should be delivered at the dumps enumerated was indispensable to the effectuation of the contract and, for that reason, it will be implied. Had the city defaulted in that respect, Delli Paoli would not have been without his clear remedy for a breach of the covenant.

I entertain no doubt as to the contract being valid and that it was within the power of the street cleaning department to make.  The appellants argue that it was unauthorized, for being in excess of the powers of the municipality.  If the provision of the charter, empowering the commissioner of street cleaning to enter into contracts for the final disposition of the street cleanings, ashes, or garbage when collected, (Section 544), did not suffice as authority, I think the municipality possessed the incidental, if not inherent, power to make the contract. (*Ketchum* v. *City of Buffalo*, 14 N. Y. 356.)  But a quite sufficient answer is that the appellants are estopped from questioning the validity of the contract upon the ground

mentioned, after Delli Paoli has had the benefit of its provisions. (*Mayor, etc., of N. Y., v. Sonneborn*, 113 N. Y. 423.)

I advise the affirmance of the judgment.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, HIS-COCK, CHASE and COLLIN, JJ., concur.

Judgment affirmed, with costs.